IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEON STANTON,<br><br>   *Petitioner,*<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>   *Respondent.* | CRIMINAL ACTION<br>No. 11-473 |

**PAPPERT, J.**                                **August 25, 2016**

## MEMORANDUM

   In October 2012 a jury found Petitioner Leon Stanton ("Stanton") guilty of federal drug and firearm offenses. Senior District Court Judge William H. Yohn, Jr. subsequently sentenced Stanton to thirty-five years in prison. Following his unsuccessful direct appeal, Stanton moves to vacate, set aside or correct his sentence under 28 U.S.C. Section 2255. Stanton also filed a related discovery motion. The Court denies both motions for the reasons below.

**I.**

   Judge Yohn, relying in part on the Third Circuit Court of Appeals's decision in *United States v. Hall*, 550 F. App'x 133, 133 (3d Cir. 2014), summarized the underlying facts of this case as follows:

> On September 10, 2010, Detective Todd Richard of the Pottstown Police Department applied for a search warrant to investigate two rival gangs that were operating in the Pottstown, Pennsylvania area. Richard's application included an affidavit of probable cause, which relied in part on information provided by four confidential informants ("CIs"), hereafter referred to as CIs #1–4. Richard was granted permission to search, among other places, a residence shared by gang member Leon Stanton and Chezaree Hall in Birdsboro, Pennsylvania—the Third Circuit summarized the events that followed:

1

> "On a cool fall morning in September of 2010, law enforcement authorities executed a search warrant of, *inter alia*, a house situated at 409 West Second Street, Birdsboro, Berks County, Pennsylvania . . . . Because of concerns about illegal weapons in the residence and because law enforcement authorities "wanted to protect the young children from any violence," officers awakened Hall and the other residents of the house early in the morning and claimed that they needed to leave the premises because of a natural gas leak. As Stanton and the other residents left the home, he was arrested. Hall and the children were directed to stand immediately across the street.
>
> A SWAT team member present at the scene noticed that Hall "was clutching her pocketbook very tightly" with "both arms around it." Finding this conduct suspicious, the SWAT member informed a detective of the Pottstown Police Department. The detective thought it unusual that Hall had taken the time to collect her pocketbook, while failing to retrieve a coat for herself or to fully dress her children. Because the detective knew of Stanton's history of violence and because the detective was concerned that guns—suspected of being in the house—might now be in the pocketbook, he advised Hall that he needed to take her pocketbook. The weight of the pocketbook heightened his concern, and when the detective opened it, he found two guns and a bag containing drugs."

On August 24, 2011, a grand jury returned an indictment against Stanton and Hall, charging them both with controlled substances violations under 21 U.S.C. §§ 841(a) (Count I) and 860(a) (Count II) and possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count III). Stanton was additionally charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count IV).

On January 20, 2012, Stanton filed an omnibus pre-trial motion, primarily seeking suppression of evidence seized pursuant to the search warrant. Stanton argued that "the alleged actions and statements of confidential informants utilized as basis for obtaining probable cause in Search Warrants [were] fabricated." The court held a hearing on this and other motions on January 30, 2012, during which time Stanton further stated to the court that CI #2 was fellow gang member Korey Brown, and that CI #3 "doesn't exist." On February 2, 2012, the court found on the record that there was no evidence "proffered by the defendants that the detective was untruthful or that . . . evidence from the CI was fabricated." The court therefore denied the motion to suppress.

On July 2, 2012, Stanton filed a motion to disclose the identity of the CIs. In that filing, Stanton claimed that CI #1 is Greg Paschall (father of fellow gang member Jamar "Mar-Mar" Paschall), that CI #2 is Korey Brown, and that CIs #3 and #4 do not exist. The court heard argument on the motion on August 21, 2012, at which time the government averred that Stanton had correctly guessed the name

of one of the CIs but would not confirm whether that name was properly matched with the particular CI in question.  In other words, the government admitted that either Greg Paschall or Korey Brown was a CI; it did not concede that Paschall was CI #1 or that Brown was CI #2.  The court found on the record that Stanton's argument as to the identities of the CIs was "pure speculation".

The court further held that "even without the allegations of Confidential Informant 1 and 2, there are sufficient allegations in the [38 page application for] search warrant in other respects, that would justify the issuance of the search warrant" and that the good faith exception likewise applied.  The court therefore denied Stanton's motion for disclosure.

On October 4, 2012, following a four-day jury trial, Stanton was found guilty on all four counts of the indictment.  Count I was subsequently dismissed as a lesser-included offense, and Stanton was sentenced to a total of 420 months in prison on the remaining charges.  Stanton timely appealed, arguing in part that the court erred in denying his motion to disclose the identities of the confidential informants.  The Third Circuit affirmed his conviction on May 6, 2014, holding that "the District Court did not abuse its discretion in denying Stanton's motion [for disclosure]."

*United States v. Stanton*, No. 11-cr-473-1, 2015 WL 5692565, at *1–2 (E.D. Pa. Sept. 23, 2015) ("*Stanton II*") (quoting *Hall*, 550 F. App'x at 133) (citations and footnotes omitted).  The Third Circuit also dismissed Stanton's argument that Judge Yohn erred in "failing to order the government to turn over materials he was entitled to under the Jencks Act," finding that Stanton "failed to direct [the court] to the applicable portion of the record or to provide any legal authority in support of his position other than a bald reference to the statute."  *United States v. Stanton*, 566 F. App'x 166, 168–69 (3d Cir.), *cert. denied*, 135 S. Ct. 690 (2014) ("*Stanton I*").

Stanton's final contention on appeal was that Judge Yohn erred in "denying his motion to produce the grand jury testimony of each witness who testified regarding the events alleged in the indictment."  *Id.* at 169.  The Third Circuit held that "Stanton was not deprived of any material to which he was legally entitled."  *Id.*  Specifically, the court observed that although "Stanton set out a litany of ways in which the grand jury testimony would have been helpful to

3

his defense[,] [h]e fail[ed] . . . to explain how the Court's ruling constituted reversible error in light of Federal Rule of Criminal Procedure 6(e), which shields grand jury testimony." *Id.*

## II.

On February 12, 2015 Stanton filed a motion for a new trial under Federal Rule of Criminal Procedure 33, arguing that a line in the Government's direct appeal brief constituted newly discovered evidence. (ECF No. 179.) Judge Yohn analyzed Stanton's motion under the five-factor test set forth in *United States v. Rutkin*, 208 F.2d 647 (3d Cir. 1953), found that he had not provided newly discovered evidence and denied his motion. *See Stanton II*, 2015 WL 5692565, at *1–4.

Stanton appealed that decision.[1] The specific line at issue stated: "[t]he government conceded that Brown was correct as to the identity of one of the four confidential informants, but declined to identify this person, arguing that Stanton had not demonstrated that disclosure of the identity of any of the informants was warranted." *United States v. Stanton*, No. 15-3953, 2016 WL 1445098, at *2 (3d Cir. Apr. 13, 2016) ("*Stanton III*"). Stanton argued that the government "had revealed that CI #2 was Brown, that this was new evidence, and that had he had this information available for the suppression hearing, there was a reasonable probability that the warrant would have been suppressed." *Id.* The Third Circuit affirmed, stating:

> The District Court did not abuse its discretion in denying Stanton's R. 33 motion. The District Court reasonably decided that the "admission" was in fact an error. From a plain reading, it appears that the government's sentence is a typographical error, and without a clear government admission regarding CI #2's identity, there is no new evidence that Stanton may rely on. Assuming that the District Court erred regarding the first prong, however, Stanton has not made a showing under the other *Rutkin* prongs, especially the fifth *Rutkin* prong, given that the District Court explicitly held that the warrant application contained sufficient information even absent CI #2's information.

---

[1] On October 27, 2015, while Stanton's appeal was pending, the case was reassigned to this Court upon Judge Yohn's retirement. (ECF No. 196.)

4

*Id.*

Before the Third Circuit's April 13, 2016 decision, Stanton filed the present motions. Stanton bases his motion to vacate on the following grounds: (1) he received ineffective assistance of counsel before trial, during trial and on appeal;[2] and (2) prosecutorial misconduct. (*See generally* Pet'r's Mot. to Vacate, ECF No. 197.) His motion for discovery seeks information which Stanton claims supports his motion to vacate. (*See generally* Pet'r's Mot. for Disc., ECF No. 198.)

### III.

To establish a claim for ineffective assistance of counsel, Stanton must show by a preponderance of the evidence:

> [First,] that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*United States v. Travillion*, 759 F.3d 281, 289 (3d Cir. 2014) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Stanton must accordingly show both deficiency and prejudice. *Id.* (citation omitted).

"The Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim." *Engle v. Isaac*, 456 U.S. 107, 134 (1982). Accordingly, Stanton can establish deficiency if he "'show[s] that counsel's representation fell below an objective standard of reasonableness' meaning 'reasonableness under prevailing professional norms.'" *Berryman v.*

---

[2] Stanton's motion is unclear at times as to whether he is talking about his trial or appellate counsel. Where there are ambiguities, the Court construes Stanton's motion as alleging ineffective assistance claims against all of his attorneys.

*Morton*, 100 F.3d 1089, 1094 (3d Cir. 1996) (quoting *Strickland*, 466 U.S. at 688).  To establish prejudice, Stanton must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

### A.

Stanton first contends that his appellate attorney rendered ineffective assistance by failing to "show the appellate court how the district court's denial of production of the grand jury material constituted reversible error . . . ."  (Pet'r's Mot. to Vacate at 8.)  This argument fails because Stanton's attorney advanced and lost this argument on Stanton's direct appeal.  Specifically, the Third Circuit observed that although "Stanton set out a litany of ways in which the grand jury testimony would have been helpful to his defense[,] [h]e fail[ed] . . . to explain how the Court's ruling constituted reversible error in light of Federal Rule of Criminal Procedure 6(e), which shields grand jury testimony." *Stanton I*, 566 F. App'x at 169.  The court also "note[d] that to the extent there were any irregularities in the grand jury proceeding, the petit jury's verdict rendered those irregularities harmless." *Id.* at 169 n.2 (citing *United States v. Mechanik*, 475 U.S. 66, 70 (1986)).

Stanton offers no arguments explaining how his counsel was ineffective other than that he failed to win on appeal.  By arguing that his counsel failed to "show the appellate court how the district court's denial of production of the grand jury material constituted reversible error," (Pet'r's Mot. to Vacate at 8), Stanton impermissibly attempts to "relitigate matters decided adversely on appeal." *Gov't of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985).  He accordingly fails to show either deficiency or prejudice under *Strickland*.

**B.**

Stanton asserts that his "trial counsel was ineffective for failure to substantiate [that] probable cause did not exist as to CI #3 . . . in the affidavit."[3] (Pet'r's Mot. to Vacate at 13–19.) Specifically, Stanton contends that his trial counsel failed to inform the trial court of the irregularities in the affidavit related to CI #3 which, according to Stanton, show that CI #3 "doesn't exist." (*Id.* at 15.) Stanton asserts that the following facts establish CI #3's non-existence, and accordingly Richard's falsifications in the affidavit:

> (1) although CI #3 claimed to be close with Stanton and knew that he sold drugs, CI #3 did not identify "what type of narcotics were allegedly being sold nor the form or quantities in which they were being sold";
>
> (2) although CI #3 claimed to have seen Stanton in possession of weapons and drugs while operating two different Oldsmobile Cutlass Supreme vehicles, CI #3's description did not include the color of the cars and state where "the sighting of the contraband occurred i.e., glovebox, underseat, etc."; and
>
> (3) although CI #3 "knew Stanton ha[d] access to and [sold] illegal narcotics out of 448 Chestnut Street [in] Pottstown, PA," the affidavit does not "mention that this informant alleges to have witnessed Stanton with handguns or drugs in his possession at this residence" in Birdsboro.

(*Id.* at 14–19.)[4]

---

[3] Stanton also contends that trial counsel was ineffective for failure to show that probable cause did not exist as to CI #4. (Pet'r's Mot. to Vacate at 13.) In support, Stanton argues only that Richard had not used CI #4 in the past, and that CI #4 did not see Stanton engage in criminal activity. (*Id.* at 17.) This argument is contradicted by the affidavit which states:

> [T]his CI observed occupants of 448 Chestnut Street making frequent trips to a gold colored Chrysler bearing Pennsylvania registration HFX1506. The CI stated that this vehicle is parked at the rear of 448 Chestnut Street and rarely, if ever, is moved. The CI states that the occupants of 448 Chestnut Street are using this vehicle to stash drugs.

(*Id.* at 27.)

[4] Stanton also contends that the affidavit was false because he was imprisoned in 2009 and therefore could not have been involved in a June 2009 shooting as provided by CI #3 in the affidavit. A review of the affidavit, however, shows that this was a typographical error. For example, the shooting is first introduced as occurring on "June 29, 2010" and later on referred to as occurring on the same date. (*See* Pet'r's Mot. to Vacate, Ex. A at 14, 22.)

7

These arguments were, however, raised by Stanton's counsel and rejected by Judge Yohn at a hearing in August of 2012.  (Gov't's Resp. to Pet'r's Mot. to Vacate, Ex. A 21:5–22:17, ECF No. 204-1.)  Specifically, the court credited Richard's prior relationship with CI #3 and found that Stanton's arguments were "speculation." (*Id.* 21:18–23.)  The court also observed that the identity of CI #3 was irrelevant, in part, because Stanton "admitted the crimes" he was charged with at Hall's trial.  (*Id.* 23:1–4.)  "[E]ven without the confidential informants," Judge Yohn concluded that "the information in the probable cause affidavit [was] sufficient for the search warrant to have been issued." (*Id.* 23:5–10.)

On appeal, the Third Circuit found that "it was not necessary for the affidavit in this case to show that drugs were being sold at Stanton's home.  It was sufficient that the facts established a 'fair probability' that Stanton, who was not permitted to possess a firearm because of his criminal history, had a firearm at his residence." *Stanton I*, 566 F. App'x at 168.  Stanton's petition therefore reiterates the same arguments already advanced and fails to show both deficiency and prejudice under *Strickland*.

## C.

Stanton also argues that his trial counsel was ineffective for his failure to persuade the court to "disclose the identity of the confidential informants . . . and re-open and/or supplement the record on the motion to suppress physical evidence" with an alleged "concession" by the government that CI #2 was Korey Brown.  (Pet'r's Mot. to Vacate at 20–21.)  The Third Circuit, however, has already rejected that argument:

> "[M]ere speculation as to the usefulness of the informant's testimony to the defendant is insufficient to justify disclosure of his identity." *United States v. Bazzano*, 712 F.2d 826, 839 (3d Cir. 1983) (citation and internal quotation marks omitted).  Moreover, we have determined that when disclosure is sought "in the hope" that it "will lead to evidence that will help [a defendant] make a *Franks* showing[,]" the "*Roviaro* balance will tend to tip against disclosing the

8

> informant's identity." *United States v. Brown*, 3 F.3d 673, 679 (3d Cir. 1993) (discussing *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)). In addition, when the informant's role relates to probable cause, disclosure is usually not required. *Bazzano*, 712 F.2d at 839 (citing *McCray v. Illinois*, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967)). Because Stanton hoped that the identity of the confidential informants would provide a basis for a hearing under *Franks* and because the informants' roles pertained to probable cause, we conclude that the District Court did not abuse its discretion in denying Stanton's motion.
>
> Nor do we see an error by the District Court in denying the motion for a *Franks* hearing. Stanton's guess as to the identity of the confidential informants does not constitute the "substantial showing" required by *Franks*. *See* 438 U.S. at 155–56, 170–71, 98 S.Ct. 2674 (holding that before a defendant may obtain an evidentiary hearing to challenge the veracity of an affiant's sworn statement, the defendant must make a "substantial preliminary showing that a false statement knowing and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit").

*Stanton I*, 566 F. App'x at 168. The Third Circuit has also rejected Stanton's argument that the government's alleged "concession" constituted new evidence:

> The District Court reasonably decided that the "admission" was in fact an error. From a plain reading, it appears that the government's sentence is a typographical error, and without a clear government admission regarding CI #2's identity, there is no new evidence that Stanton may rely on. *See Schneider*, 801 F.3d at 203–04 (discussing lack of "new" evidence). Assuming that the District Court erred regarding the first prong, however, Stanton has not made a showing under the other *Rutkin* prongs, especially the fifth *Rutkin* prong, given that the District Court explicitly held that the warrant application contained sufficient information even absent CI #2's information. *See United States v. Bazzano*, 712 F.2d 826, 839 (3d Cir. 1983).

*Stanton III*, 2016 WL 1445098, at *2. Stanton's attempts to re-litigate issues that his counsel raised and lost on appeal do not establish the deficiency and prejudice required under *Strickland* and his ineffective assistance claim accordingly fails.

## IV.

Stanton also contends that the prosecutor engaged in misconduct at his underlying trial by: (1) failing to identify Korey Brown as CI #2 which Stanton contends is a *Brady* violation;

9

and (2) telling Stanton that he would be prosecuted federally if he refused to cooperate. (Pet'r's Mot. to Vacate at 23.) Under 28 U.S.C. Section 2255, relief for prosecutorial misconduct is appropriate "when the prosecutor's misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." *United States v. Mangiardi*, 173 F. Supp. 2d 292, 303 (M.D. Pa. 2001) (citation and internal quotation marks omitted). "[F]or due process to have been offended, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial." *Werts v. Vaughn*, 228 F.3d 178, 197–98 (3d Cir. 2000) (citing *Greer v. Miller*, 483 U.S. 756, 765 (1987)) (citation internal quotation marks omitted).

The argument regarding the identity of CI #2 was rejected a number of times—*see supra* Parts I–III—including in Stanton's motion to dismiss the indictment for prosecutorial misconduct. (ECF No. 138.) As to the second argument, Stanton fails to identify how this perceived threat "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Mangiardi*, 173 F. Supp. 2d at 303 (citation and internal quotation marks omitted). Stanton therefore fails to establish a prosecutorial misconduct claim.

## V.

Stanton's motion for discovery seeks the grand jury transcripts so that he can "substantiate his claims that Detective Richard offered perjured or knowingly false information to the Grand Jury." (Pet'r's Mot. for Disc. at *1.) Stanton offers the same arguments which Judge Yohn rejected in his August 14, 2012 Order denying Stanton's motion to produce the transcripts:

> [T]he motion for production is **DENIED** except to the extent that it involves government obligations under the Jencks Act or *Brady*. The motion to inspect grand jury minutes is **DENIED** as defendant has made no showing of possible misconduct or any other irregularity in the grand jury proceedings.

(ECF No. 129 ¶¶ 1–2 (emphasis in original).)  Stanton's claim lacks as much merit today as it did when the trial court and Third Circuit rejected it.

## VI.

Stanton's petition requests an evidentiary hearing.  Whether to hold an evidentiary hearing is a decision left to the sound discretion of the district court.  *See United States v. Tolliver*, 800 F.3d 138, 140 (3d Cir. 2015).  "[T]he district court abuses its discretion if it fails to hold an evidentiary hearing when the files and records of the case are inconclusive as to whether the movant is entitled to relief."  *Id.* (quoting *United States v. Booth*, 432 F.3d 542, 546 (3d Cir. 2005)).  The files and records of this case are conclusive.  The District Court and Third Circuit have repeatedly rejected the same arguments Stanton advances here in support of his Section 2255 motion.  The Court accordingly denies his request.

## VII.

When a district court denies a Section 2255 motion, a petitioner may only appeal if the district court grants a certificate of appealability.  28 U.S.C § 2253.  Section 2253 "permits the issuance of a [certificate of appealability] only where a petitioner has made a substantial showing of the denial of a constitutional right."  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks omitted).  Stanton must therefore "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Since no reasonable jurist would disagree with our assessment of Stanton's claims, no certificate of appealability will issue.  *See id.*

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.